MILLER SCOTT & HOLBROOK

Attorneys and Counselors at Law

MICHAEL W. MILLER
TURNER C. SCOTT
FRANCIS S. HOLBROOK II*

Of Counsel
ROLAND F. CHASE

*also admitted in Connecticut

March 7, 2007

Brian Voke, Esq.
Campbell Campbell Edwards & Conroy
One Constitution Plaza
Boston, MA 02129

***RE:*** ***American Capital Corporation vs. Timothy L. Blixseth, Edra Blixseth and Mortgage Guarantee and Title Company***
***United States District Court***

Dear Mr. Voke:

I have reviewed the following items supplied by your office relative to the above captioned matter:

1. Complaint;
2. Answer and Counter Claim;
3. RI Real Estate Sales Disclosure Forms Rhode Island Association of Realtors (Revised 2/98) delivered to Tim and Edra Blixseth;
4. Agreement for Sale and Purchase;
5. March 10, 2006 correspondence from Attorney Hawes to Guido Salvadore;
6. Timothy L. Blixseth Answers to Plaintiff's Interrogatories;
7. Deposition of Guido Salvadore and Exhibits # 9-16;
8. American Capital Corporation's Responses to Defendant's Requests for Admission as amended;
9. Harry Kojoian correspondence to Timothy L. Blixseth dated 8/25/05;
10. Deposition of Harry Kojoian;
11. Deposition of Nancy Waddell and Exhibits # 1-8; and
12. Deposition of Andrew E. Hawes and Exhibits # 1-28.

I have also reviewed Rhode Island General Laws, Newport Zoning Ordinances and the Secretary of the Interior Standards for Rehabilitation and Standards for Evaluating Significance within Registered Historic Districts (36 CFR 67.7 and 67.5)

The Complaint alleges, documents attached to the Complaint and deposition exhibits show and I understand the facts as follows:

Timothy Blixseth and Edra Blixseth planned to use 3 parcels of property in Newport, RI, known as Miramar (and described in the Purchase and Sales Agreement as Lots 3, 9 & 10 on Newport Tax



122 TOURO STREET NEWPORT, RHODE ISLAND 02840-2967 TEL 401-847-7500 FAX 401-848-5854 E-MAIL attorney@millerscott.com

Assessor's Plat 38), as part of Yellowstone Club World. The Blixseths intended to make the following modifications to the 3 parcels upon completion of the purchase:

1. construction of a new wellness center and an indoor pool and Jacuzzi, spa, gym and meditation room;
2. construction of additional tennis courts on the property;
3. construction of a youth center which would include class room facilities, stages and cabins and tee-pees for summer camps;
4. construction of a security facility near the gate to Miramar; and
5. construction of new fence around the property which would include surveillance cameras

Mr. and Mrs. Blixseth through their counsel Andrew Hawes, sent a letter to Guido Salvadore, counsel for American Capital Corporation("ACC"), dated March 10, 2006, terminating the Agreement for Sale and Purchase dated November 23, 2005 and demanding a return of their deposit as provided for by R.I.G.L. 5-20.4-4(b).

ACC, by using the revised 2/98 edition of the Rhode Island Real Estate Sales Disclosure Form in an effort to comply with requirements of R.I.G.L. 5-20.8-2, failed to disclose that Miramar was located in the Newport Historic District and failed to disclose (as required by R.I.G.L. 5-20.8-2(b)(2)(w)) that Miramar was "located in a historic district" and "may be subject to construction, expansion or renovation limitations. Contact the local building inspection official for details." ACC refused to return the Blixseth's deposit as required by R.I.G.L. 5-20.8-4(b).

ACC's agent, Harry Kojoian sent a letter to Timothy Blixseth dated representing to Mr. Blixseth that Miramar should fit flawlessly into Mr. Blixseths business strategy for Yellowstone Club World. (See August 15, 2005 letter from Harry Kohoian to Mr. Blixseth).

On or about November 10, 2005 ACC's counsel, Guido Salvadore represented to Tim Blixseth and Andrew Hawes that he was sure that if the Blixseth's purchased the properties that the details between Tim and his club can be worked out in a fashion that would not violate existing R-60 Zoning. (see November 10, 2005 email from Attorney Salvadore to Attorney Hawes)

Mr. Salvadore testified in his deposition that he spoke with Guy Weston from the City of Newport Zoning office prior to the November 10, 2005 email to Andrew Hawes and that he knew from that conversation that the Miramar property could not be used by the Blixseths for part of its World Club (Salvadore Deposition, p. 15) because it would violate Newport's R-60 Zoning.

I have been a practicing lawyer in Newport, Rhode Island for the last 29 years. A significant portion of my practice involves the handling of real estate and zoning matters including appearing before the Newport Historic District Commission ("HDC"). I appear regularly before the Newport HDC and am familiar with HDC policies and procedures, Secretary of Interior Standards for Rehabilitation, 36 CFR 67.7, and the Bellevue Avenue National Historic District in which Miramar is located. I am also familiar with R-60 Zoning District, the Newport Zoning Ordinance and the Rhode Island Real Estate Disclosure Statute (R.I.G.L. 5-20.8).

The City of Newport enacted an ordinance pursuant to the enabling legislation under R.I.G.L. 45-24.1. As a part of the Newport Zoning Ordinance, historic area zoning was established in Newport and an HDC was created.

In 1999 the Newport HDC adopted 36 CFR 67.7 as design guidelines for activity within the Newport Historic District.

The Newport HDC is responsible for issuing "Certificates of Appropriateness," which are necessary for any "construction, alteration, repair, removal or demolition affecting the exterior appearance of a structure or its appurtenances" within the Newport Historic District. Newport City Ordinances, 17.80.040 (D)(1)(a).

"Appurtenances" include "paving, doors, windows, signs, materials, decorative accessories, fences, and historic landscape features." *Id.* at 17.80.020.

Certificates of Appropriateness are not required for any interior renovations or construction. *Id.* at 17.80.040 (D)(3)(d). Several exterior elements that do not affect the property's structure are also exempt from the Certificate requirement: (A) paint colors or composition, (B) decorations, such as for a holiday, (C) exterior lighting, (D) flagpoles, (E) lawn furniture and birdbaths, (F) repair of existing fences, paving, or walls, (G) window air conditioners, and (H) storm windows and doors. *Id.* at 17.80.070.

In the event that a property owner seeks to demolish a property within the historic district, the HDC is charged to aid the property owner "…in identifying and evaluating alternative to demolition, including sale of the structure." *Id.* at 17.80.040 (D)(5)(e)(iv). The HDC may then consider whether the property owner has made reasonable efforts to sell the property in determining whether to grant a Certificate of Appropriateness for demolition.

In 1999, the Newport HDC adopted the U.S. National Park Services' "Standards for Rehabilitation" (36 CFR 67.7) as their design guidelines. There are ten standards specifically relating to the rehabilitation of historic properties:

1. A property shall be used for its historic purpose or be placed in a new use that requires minimal change to the defining characteristics of the building and its site and environment.
2. The historic character of a property shall be retained and preserved. The removal of historic materials or alteration of features and spaces that characterize a property shall be avoided.
3. Each property shall be recognized as a physical record of its time, place, and use. Changes that create a false sense of historical development, such as adding conjectural features or architectural elements from other buildings, shall not be undertaken.
4. Most properties change over time; those changes that have acquired historic significance in their own right shall be retained and preserved.

5. Distinctive features, finishes, and construction techniques or examples of craftsmanship that characterize a historic property shall be preserved.
6. Deteriorated historic features shall be repaired rather than replaced. Where the severity of deterioration requires replacement of a distinctive feature, the new feature shall match the old in design, color, texture, and other visual qualities and, where possible, materials. Replacement of missing features shall be substantiated by documentary, physical, or pictorial evidence.
7. Chemical or physical treatments, such as sandblasting, that cause damage to historic materials shall not be used. The surface cleaning of structures, if appropriate, shall be undertaken using the gentlest means possible.
8. Significant archeological resources affected by a project shall be protected and preserved. If such resources must be disturbed, mitigation measures shall be undertaken.
9. New additions, exterior alterations, or related new construction shall not destroy historic materials that characterize the property. The new work shall be differentiated from the old and shall be compatible with the massing, size, scale, and architectural features to protect the historic integrity of the property and its environment.
10. New additions and adjacent or related new construction shall be undertaken in such a manner that if removed in the future, the essential form and integrity of the historic property and its environment would be unimpaired. 36 CFR 67.7(b)(1)-(10).

The significance of a building is measured by how its "…location, design, setting, materials, workmanship, feeling and association adds to the district's sense of time and place and historical development." 36 CFR 67.5 (a)(1).

The National Park Service regulations further state that materials and craftsmanship used on a historic property must be "commensurate with the qualities of materials and craftsmanship of the historic property." *Id.* at 67.7 (c).

Where dismantling and rebuilding are necessary due to unstable or compromised structural support, the necessity for dismantling must be justified, and "significant architectural features and overall design" must be retained. *Id.* at 67.7 (d).

As previously stated, neither Real Estate Disclosure Form delivered to the Blixseths disclosed the fact that the property was located within the Newport Historic District and "that property located in a historic district may be subject to construction expansion or renovation limitations", as required by R.I.G.L. 5-20.8-2(b)(2)(xxiii). R.I.G.L. 5-20.8-2(b)(2)(xxiii) is also referenced in earlier Rhode Island Public Laws as 5-20.8-2(b)(2)(w). Further, both disclosure forms failed to advise the Blixseths to "contact the local building inspection official for details" concerning the Historic District designation as required by the above statute.

Attorney Guido Salvadore, on behalf of ACC, provided the Blixseths' with an official "R.I.G.L. Real Estate Sales Disclosure Form" but it was outdated and did not contain the mandatory disclosure language. The form given to the Blixseths was dated "2/98", which form was published before R.I.G.L. 5-20-8-2(b) was amended in 1999 to include the above-quoted mandatory disclosure language. See P.L. 1999, ch.419, § 1.

It is my opinion that Attorney Guido Salvadore acting on behalf of ACC departed from the accepted standards of care for the average competent Rhode Island lawyer and broker by not reviewing the Real Estate Disclosure Statute to make sure that the forms delivered to the Blixseths complied with the statute; and by not including in the disclosures the language mandated by the statute that "property located in a historic district may be subject to construction expansion or renovation limitations. Contact the local building inspection official for details", by not determining whether the property lay in The Newport Historic District, and by not including the fact that the mansion and the carriage house were located within the Newport Historic District.

The area surrounding the Miramar property is one of both local and national historical significance. In close proximity to the Miramar property and listed on the National Register of Historic Places are the Newport Casino, The Newport County Preservation Society's properties known as Kingscote, Breakers, Rosecliff, the Elms, and the Marble House, the Historic Travers Block and the Edward King house to name a few.

The Newport HDC strictly construes its regulations and guidelines for construction, expansion and repairs to property in this area to ensure that the properties retain their historical uses and architectural features and maintain a compatible relationship with the surrounding properties.

In monthly appearances before the Newport HDC and continuing contact with City Staff, I have observed an attention to architectural and material detail that holds all applicants and their professionals to an extremely high standard. In all my years of practice before the Newport HDC, I have never known any property or application to be overlooked or the standards sacrificed for any private or public purpose.

It is my opinion that the Newport HDC would not permit changes to use the Miramar properties necessary to convert the properties to the a private club including a yacht club as defined under the Zoning Ordinance. As an attorney, I represented Bellevue Avenue Ochre Point Neighborhood Association in opposition to a similar plan by Peter DeSavry to turn Vernon Court (located at 492 Bellevue Avenue, approximately ½ mile from Miramar) into a private club. The use plans were not unlike those plans contemplated by the Blixseths for Miramar. Renovation plans were proposed to accommodate the use. Opposition at all levels of the governmental approval process (HDC, Planning and Zoning) was initiated and eventually the proposed club project was abandoned.

In my opinion the fact that the 3 parcels of property known as Miramar are located in the Newport Historic District and subject to the regulations and standards of the Newport HDC, would be material to any prospective purchaser. The reason for this is that the standards and guidelines provide the Newport HDC with significant discretion to deny a property owner's exterior construction,

expansion, repair, renovation, and/or demolition plans. In addition, neighbors are entitled to file objections to such applications and the process is expensive, often resulting in lengthy delays before any decision is received by the applicant. Further, the commission standards and guidelines make new construction and repairs to the exterior of the property more expensive and a more lengthy process than property not located within the Historic District. Clearly, whether the property is within the Newport Historic District is a material fact that requires disclosure. In fact, I have had certain clients refuse to consider and make offers on property that were within the Newport HDC jurisdiction because of the ability of the neighbors and the Newport HDC to frustrate their plans. All have chosen to purchase outside of the district or in another community.

The Miramar property given its location, design, and history, is in an area considered by the Newport Historic District as property with historic and/or architectural value and significance in relation to the historic value of the surrounding area. Miramar is squarely in the Bellevue Avenue National Historic Landmark District. Given the location of the property, the Newport HDC regulations and guidelines, prior rulings, the neighbors objections to prior applicants projects and the historical and architectural nature of the property, it is my opinion that the Newport HDC would not allow the Blixseths to change and make the necessary improvements to the property for use as a club and would likely deny or restrict many of the proposed plans to expand the exterior of the property for use as part of Yellowstone World Club. In addition, the Blixseths could expect significant delays as long as 3-5 years to receive a final decision on any proposed plans. New construction and repairs to the exterior of the property which are subject to the Newport HDC Standards would also result in higher costs than if the property were not located in the Historic District.

It is my opinion that ACC's failure to disclose in the Real Estate Disclosure Forms delivered to the Blixseths that the Carriage House, Mansion and vacant land were located within the Newport Historic District is a materially deficient condition under the Real Estate Disclosure Statute.

My opinion is based upon the Real Estate Disclosure Statute; the fact that Historic District status imposes land use restrictions on the property that would otherwise not exist; the enabling statute for the historic district; the Newport HDC rules, regulations and guidelines, prior rulings of the Newport HDC for properties located in the area of Miramar; the Department of Interiors Standards for Rehabilitation which are used by the commission; the historical properties in the area; the time and expense involved in seeking required approvals from the Newport HDC for alterations to the exterior of the property.

Attached as Appendix A, is a list of properties within the Newport Historic District Commission of which I have personal knowledge and/or have represented clients concerning the applications before the Newport HDC

It is also my opinion that the Historic District designation for the three (3) parcels of property known as Miramar, restricts the potential to develop this property for commercial purposes such as a vacation club such as Yellowstone Club World and that the property value would be higher if it could be used as a vacation club rather than as a residence. Properties with less restrictions and more zoning flexibility are desirable properties in a tourist oriented community such as Newport. Furthermore, the Secretary of the Interior standards favors retention of the historic character of

properties and should there be a change of use, minimal change to the character of the building site and environment is required. This opinion is also based upon my knowledge and experience with commercial vacation properties in Newport, my knowledge of the sales of commercial vacation properties and residences, my experience with the Newport HDC and neighborhood objections to development of properties within the Newport Historic District.

No reasonably competent attorney practicing real estate law or real estate broker in Rhode Island could or should reasonably opine and represent to a prospective purchaser of Miramar the representations made by Mr. Salvadore in his November 10, 2005 email to Andrew Hawes (Exhibit 15, Deposition of Guido Salvadore):

> "Tim did wonder why he could not use a private residence for a private club. I tend to agree. If Tim and his wife buy Miramar for use as their private residence they should have the right to entertain offers periodically at their residence. I'm sure the details between Tim and his "club" can be worked out in a fashion that does not violate existing "R-60 zoning".

In my opinion Guido Salvadore departed from the accepted standards of reasonable care for the average qualified attorney practicing in Rhode Island by making the above representations. Newport has previously denied requests for private clubs to be operated in a R-60 historic zoned district and there is no basis for believing that the zoning board and the HDC would permit this property to be used as a private club or even that the structures could be altered to accommodate such a use. The exception for yachting organizations has been limited to temporary housing of crews designed for America's Cup type events. Mr. Salvadore admitted he was aware of this fact prior to making the above quoted representations.

Exhibits expected to be introduced at trial are attached as Appendix B.

With best wishes, I remain,

Cordially yours,

MILLER SCOTT & HOLBROOK

Turner C. Scott

Via First Class Mail
TCSsm2049-1111/167

# APPENDIX A

Attached as Appendix A is a list of properties within the Newport Historic District of which I have personal knowledge and/or have represented clients concerning.

**Salve Regina University Gym/Athletic Facility, Ochre Point:** Neighborhood opposition lead to a redesign and reduction in the size, scale and massing of this facility. Eight (8) Months to One (1) year administrative process before the Newport Historic District Commission.

**Salve Regina University Library, Ochre Point:** Neighborhood opposition lead to a design and re-siting of the library facility. Six (6) to Eight (8) Month administrative process before the Newport Historic District Commission.

**Vernon Court / Bellevue Avenue:** Owner proposed a private club similar to the Yellowstone proposal. See comments in letter.

**Narragansett Avenue (formerly portion of Bois Dore Estate)**: No neighborhood opposition, but Newport HDC issues with siting, design, materials, garden and driveway locations. Four (4) Month administrative process resulting in approval with many modifications.

**Bellevue Shopping Center, Bellevue Avenue**: This shopping center was the subject of one of the few reported cases before the RI Supreme Court. See Bellevue Shopping Center Associates v. Roland Chase et. al., 547 $A^2$ 760, 1990. Recently, the owners proposed a mixed use residential/commercial facility replacing the shopping center. Neighborhood and public interest group involvement and opposition was very active. A reduced concept/design was finally approved by the Newport HDC after two (2) years of applications and hearings.

**Touro Synagogue Visitor's Center, Touro Street**: A small group of neighbors were able to delay and continue to threaten delay of plans to construct a stone Visitor's Center for the Touro Synagogue. A recent Supreme Court decision has given the Synagogue to start construction drawings to move forward with the project. Very active Newport HDC involvement resulted in numerous changes to the materials, location and landscape improvements.

**Avalon Estate, Ocean Drive**: A large partially fire damaged estate was purchased and a single family stone dwelling with a detached guest, carriage house and caretaker facility was proposed. The Newport HDC created a subcommittee to work with the architectural firm to work out plans that met with the Secretary of the Interior standards for this prominent property. After Six (6) to Eight (8) Months and an extensive historic cataloging and documentation process, plans were approved.

**New York Yacht Club, Halidon Avenue:** Over the past Ten (10) years, improvements have been made to convert a once prominent estate into an active yacht club. The mansion sits over Newport Harbor. All of the improvements and changes were closely watched by local and state agencies. The Newport HDC aspect of improvements have been a thorough investigation and series of compromises to achieve desired results.

**Cluny School, Brenton Road**: Expansion of the school was proposed. The siting, size, materials and design were all subject of intense negotiations between the school and a concerned neighbor. Approval was finally provided after numerous changes in the plans sought by the Newport HDC and the neighbor were introduced into the plans. Nine (9) Month administrative process.

**Inchiquin Estate, Bellevue Avenue**: Condominium owner proposed establishing a swimming pool and patio to be attached to the historic Manor House. The Condominium Association was in favor of the plans, but neighbors thwarted the efforts and no pool or patio has been constructed. The application was either withdrawn facing a difficult hearing before the Newport HDC or denial. Nine (9) Month administrative process before either denial or withdrawal.

Other non historic properties or sites (single family dwellings for the most part) too numerous to catalog here are testimony to the strict adherence to the Secretary of the Interior Standards for Rehabilitation as applied by the Newport HDC. A further listing of these properties can be made upon request and if necessary.

S:\SMalloy\Court\Timelines - History\Blixeth Appendix A.wpd

# APPENDIX B

HDC Zoning Map

HDC Application Pre 2007

HDC Application 2007 - Present

36 USC 67.5 Standards for Evaluating Significance within Registered Historic Districts

36 USC 67.7 Standard for Rehabilitation

City of Newport Web Site regarding HDC

Newport HDC Brochure

History of R.I.G.L. 5-20.8 with Public Laws

Rhode Island Real Estate Sales Disclosure Form as Revised through years

National Registry of Historic Places Inventory - Nomination form
Bellevue Avenue Historic District

**AMERICAN CAPITAL CORPORATION**
**v.**
**TIMOTHY L. BLIXSETH, EDRA BLIXSETH**
**& MORTGAGE GUARANTEE and TITLE CO.**

| DATE | ACTION | Location/Comment |
|---|---|---|
| 6/21/92 | Public Law 1992 Ch 425 Approved - Establishes R.I.G.L. 5-20.8 | |
| 3/29/93 | RI Real Estate Sales Disclosure Form | See RI Real Estate Laws Pgs. 7-10 and Copy of R.I.G.L. 5-20.8 |
| 6/1/93 | Effective Date of R.I.G.L. 5-20.8 | |
| 7/28/93 | Amendment to R.I.G.L. 5-20.8<br>Amend 5-20.8-2(b) (34)<br>Adds language regarding when Disclosure Statement is to be delivered to Buyer | Effective Date 10/1/93 |
| 1995 | Land Use Environmental Law | Article by Diana D. McInerney |
| 2/98 | Revision to Disclosure Form | |
| 7/3/99 | R.I.G.L. 5-20.8-2 Amended to Require HDC Language in Subsection (w) | |
| 7/00 | Revised Rhode Island Sales Disclosure Form<br>Adds Megan's Law language (No statutory requirement) | |
| 6/25/02 | Amendment to R.I.G.L. 5-20.8<br>Amend 5-20.8-2(b) (2) (xviii) PL 2002 Ch 161<br>Adds language regarding private water supply testing requirements | Effective Date 6/25/02 |
| 6/25/02 | Amendment to R.I.G.L. 5-20.8<br>Amend 5-20.8-2(b) (2) (xviii) PL 2002 Ch 162<br>Amends language from "RI" to "Rhode Island" | Effective Date 6/25/02 |
| 01/03 | Revised Rhode Island Sales Disclosure Form<br>Adds water testing language and revises layout of form | |
| 7/3/04 | Amendment to R.I.G.L. 5-20.8<br>Amend 5-20.8-2(b) (2) (xviii) PL 2004 Ch 313<br>Adds survey and encroachment language | Effective Date 7/3/04 |
| 8/5/04 | Amendment to R.I.G.L. 5/20.8<br>Amend 5-20.8-2(b) (2) (xviii) PL 2004 Ch 600<br>Identical sections amended as PL 2004 Ch 313 | |
| 11/18/05 | Rhode Island Real Estate Disclosure Form (Revision 2/98)<br>Signed by both Buyers & Sellers | Exhibit 6 and 7<br>Deposition of Nancy Waddell |
| 4/06 | Revised Rhode Island Seller Disclosure Form<br>Adds language concerning survey | |