**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **AMERICAN CAPITAL CORPORATION,** | ) | |
| | ) | |
| **Plaintiff** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | **C.A. No. 06-90S** |
| **TIMOTHY L BLIXSETH; EDRA BLIXSETH;** | ) | |
| **and MORTGAGE GUARANTEE & TITLE CO.** | ) | |
| | ) | |
| **Defendants** | ) | |
| | ) | |

# THE BLIXSETH'S MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

## Introduction

On February 3, 2006, American Capital Corporation ("American") filed suit against Timothy and Edra Blixseth seeking to enforce an Agreement for Sale and Purchase dated November 23, 2005, to sell 3 parcels of land in Newport, Rhode Island to the Blixseths. By letter dated March 10, 2006 the Blixseths voided the Agreement and demanded a return of their $1.25 million deposit after they learned that American knew the property was located in the Newport Historic District but failed to disclose this information along with the mandated disclosure language required by G.L. c. 5-20.8–2 (xxiii), that "property located in a historic district may be subject to construction, expansion or renovation limitations. Contact the local building

inspector official for details." The Blixseths filed a counterclaim against American demanding a return of their deposit and dismissal of American's Complaint.

The Blixseths are entitled to summary judgment as the undisputed facts reveal the following:

1. The Blixseths exercised their rights pursuant to R.I. G.L. c 5-20.8 to void the Agreement For Sale and Purchase of the 3 parcels of residential real estate and to recover their deposit of $1.25 million from American after they discovered that American knew but failed to disclose that the properties were located in the Newport Historic District and American failed to include the statutorily mandated language in the disclosures provided to the Blixseths, that "property located in a historic district may be subject to construction, expansion or renovation limitations. Contact the local building inspection official for details." The failure to disclose that the property was located in a historic district and to provide the statutorily mandated language was a "materially deficient condition" under R.I. G.L. § 1956 c. 5-20.8 as a matter of law. Further, even if American's failure to disclose the historic district status of the property and the statutorily mandated language was not material as a matter of law, it was material to the Blixseths and the failure to provide the statutory disclosures constituted a material deficient condition

under the statute. Finally, the Blixseths voided the Agreement for Sale and Purchase and demanded a return of their deposit prior to "closing" as defined by the G.L. c. 5-20.8 and are entitled to a return of their deposit and a dismissal of American's complaint.

2. American was not ready, willing and able to convey the property as provided for by the Agreement for Sale and Purchase as the Board of Directors for American never voted to authorize the sale of the 3 properties as required by Rhode Island law and consequently American has no reasonable expectation of proving that any alleged breach of contract by the Blixseths was the proximate cause of any damage to American.

## I. <u>The Applicable Law On The Historic District Claim</u>

Chapter 17.80 of the Title 17 of the Codified Ordinances of the City of Newport addresses historic district zoning. A copy of the City of Newport's historic district zoning ordinance is attached as Exhibit P. Attached as Exhibit Q is the Newport Historic District Commissions "Policies and Procedures." Attached as Exhibit R is a copy of 36 CFR 67 adopted as design guidelines by the Newport Historic District Commission in 1999.

The Newport Historic Commission is responsible for issuing "Certificates of Appropriateness," which are necessary for any

"construction, alteration, repair, removal or demolition affecting the exterior appearance of a structure or its appurtenances" within the Newport Historic District. Newport City Ordinances, 17.80.040 (D)(1)(a). "Appurtenances" include "paving, doors, windows, signs, materials, decorative accessories, fences, and historic landscape features." Id. at 17.80.020.

Certificates of Appropriateness are not required for any interior renovations or construction. Id. at 17.80.040 (D)(3)(d). Several exterior elements that do not affect the property's structure are also exempt from the Certificate requirement: (A) paint colors or composition, (B) decorations, such as for a holiday, (C) exterior lighting, (D) flagpoles, (E) lawn furniture and birdbaths, (F) repair of existing fences, paving, or walls, (G) window air conditioners, and (H) storm windows and doors. Id. at 17.80.070.

In the event that a property owner seeks to demolish a property within the historic district, the Commission is charged to aid the property owner "…in identifying and evaluating alternative to demolition, including sale of the structure." Id. at 17.80.040 (D)(5)(e)(iv). The Commission may then consider whether the property owner has made reasonable efforts to sell the property in determining whether to grant a Certificate of Appropriateness for demolition.

City zoning ordinances instruct the Commission to consider the historical "significance" of a property, the contribution of the property to the "historical and architectural significance of the district," and the "appropriateness" of the proposed construction or renovation project. Id. at 17.80.040 (D)(3)(a)-(c).

The significance of a building is measured by how its "...location, design, setting, materials, workmanship, feeling and association adds to the district's sense of time and place and historical development." 36 CFR 67.5 (a)(1).

The Commission has adopted the U.S. National Park Services' "Standards for Rehabilitation" as their design guidelines. There are ten standards specifically relating to the rehabilitation of historic properties:

1. A property shall be used for its historic purpose or be placed in a new use that requires minimal change to the defining characteristics of the building and its site and environment. 36 CFR 67.7 (b)(1).
2. The historic character of a property shall be retained and preserved. The removal of historic materials or alteration of features and spaces that characterize a property shall be avoided. 36 CFR 67.7 (b)(2).

3. Each property shall be recognized as a physical record of its time, place, and use. Changes that create a false sense of historical development, such as adding conjectural features or architectural elements from other buildings, shall not be undertaken. 36 CFR 67.7 (b)(3).
4. Most properties change over time; those changes that have acquired historic significance in their own right shall be retained and preserved. 36 CFR 67.7 (b)(4).
5. Distinctive features, finishes, and construction techniques or examples of craftsmanship that characterize a historic property shall be preserved. 36 CFR 67.7 (b)(5).
6. Deteriorated historic features shall be repaired rather than replaced. Where the severity of deterioration requires replacement of a distinctive feature, the new feature shall match the old in design, color, texture, and other visual qualities and, where possible, materials. Replacement of missing features shall be substantiated by documentary, physical, or pictorial evidence. 36 CFR 67.7 (b)(6).
7. Chemical or physical treatments, such as sandblasting, that cause damage to historic materials shall not be used. The

surface cleaning of structures, if appropriate, shall be undertaken using the gentlest means possible. 36 CFR 67.7 (b)(7).

8. Significant archeological resources affected by a project shall be protected and preserved. If such resources must be disturbed, mitigation measures shall be undertaken. 36 CFR 67.7 (b)(8).

9. New additions, exterior alterations, or related new construction shall not destroy historic materials that characterize the property. The new work shall be differentiated from the old and shall be compatible with the massing, size, scale, and architectural features to protect the historic integrity of the property and its environment. 36 CFR 67.7 (b)(9). (emphasis added)

10. New additions and adjacent or related new construction shall be undertaken in such a manner that if removed in the future, the essential form and integrity of the historic property and its environment would be unimpaired. 36 CFR 67.7(b)(10).

The National Park Service regulations further state that materials and craftsmanship used on a historic property must be "commensurate with the qualities of materials and craftsmanship of the historic property." Id. at 67.7 (c). Where dismantling and rebuilding are necessary due to unstable or compromised structural support, the necessity for dismantling must be justified, and "significant architectural features and overall design" must be retained. Id. at 67.7 (d).

The Rhode Island Supreme Court has made clear that "The historical area zoning legislation for [the City of Newport] vests [the] historic district commission with authority to prevent construction, alteration, or demolition of buildings in a historic district." Bellevue Shopping Center Associates v. Roland Chase et al 574 A.2d 760, 764 (R.I. 1990).

## II. Legal Standard

Federal Rule 56(b) provides that "a party against whom a claim ... is asserted ... may, at any time, move with or without supporting affidavits for a summary judgment in the party's favor as to all or any part thereof." Fed. R. Civ. P. 56(b). Rule 56(c) provides that the "judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is

no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no "genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

Celotex Corp. v. Catrett, 477 U.S. 317, 322-323, 325 (1986). Once such a showing has been made, the burden shifts to the party opposing summary judgment to come forward with specific, concrete, admissible evidence sufficient to prove every element of his claim at trial. Conclusory allegations, improbable inferences, unsupported speculation, hearsay, and incompetent opinions are not enough. Fed. R. Civ. P. 56(e); Hayes v. Douglas Dynamics, Inc., 8 F.3d 88, 92 (1st Cir. 1993); LeBlanc v. Great American Ins. Co., 6 F.3d 836, 841-842 (1st Cir. 1993); Federal Deposit Insurance Corp. v. Fonseca, 795 F.2d 1102, 1110 (1st Cir. 1986).

## III. The Real Estate Disclosure Statute

In 1992, the Rhode Island Legislature followed the growing trend in many other jurisdictions and enacted a Real Estate Sales Disclosure Statute

requiring seller's of real estate to disclose to prospective purchasers comprehensive information regarding the pre-existing conditions in the location and structure of the property offered for sale.[1] R.I.G.L. § 1956 Title 5 chapter 5-20.8. In recent years, many states have enacted legislations imposing disclosure obligations on sellers of real estate. See 39 Real Prop. Prob. & Tr. J 193, n. 9. "Under the modern trend, a seller cannot keep silent and leave the buyer to her own devices to discover defects." 31 Real Est. L.J. 303. This disclosure obligation has become the norm in at least two thirds of the states. Id.

The Rhode Island statute imposes an affirmative duty on the seller of real estate to disclose material facts concerning the characteristics and conditions of the property. R.I.G.L. § 1956 Title 5 chapter 5-20.8. To the extent that a seller fails to comply with the statutory disclosure requirements, the statute specifically provides the buyer the right to void the agreement to transfer and to a return of his/her deposit. See R.I.G.L. § 1956 c.5-20.8-4.

The Rhode Island Statute specifically states, in pertinent part:

[1] Prior to the enactment of disclosure statutes, sellers of real property could insulate themselves from liability to the buyer for undisclosed conditions existing on the property. "As long as the seller avoided affirmative misrepresentations, the doctrine of caveat emptor or "let the buyer beware" placed the burden on the buyer to discover any problems." Real Estate Law Journal; LET THE SELLER BEWARE: DISCLOSURES, DISCLAIMERS, AND "AS IS" CLAUSES, 31 Real Est. L.J. 303 (2003). "Strict adherence to caveat emptor left buyers vulnerable to latent defects, even those known to the seller." 39 Real Prop. Prob. & Tr. J 193, 199 (2004). Accordingly, "[t]o correct this inequity and reconcile the doctrine of caveat emptor with the rising tide of consumer protection law, from the 1960's onward, courts began conditioning the application of the doctrine by requiring sellers to disclose known material latent defects." Id. at 199.

> (a) As soon as practicable, but in any event no later than prior to signing any agreement to transfer real estate, the seller of the real estate shall deliver a written disclosure to the buyer and to each agent with whom the seller knows he or she or the buyer has dealt in connection with the real estate. The written disclosure shall comply with the requirements set forth in subsection (b) of this section and shall state all deficient conditions of which the seller has actual knowledge.
>
> (b)(1) The Rhode Island real estate commission may approve a form of written disclosure as required under this chapter or the seller may use a disclosure form substantially conforming to the requirements of this section. The following provisions shall appear conspicuously at the top of any written disclosure form: "Prior to the signing of an agreement to transfer real estate (vacant land or real property and improvements consisting of a house or building containing one to four (4) dwelling units), the seller is providing the buyer with this written disclosure of all deficient conditions of which the seller has knowledge.

R.I.G.L. § 1956 c.5-20.8-2(a) – (b)(1). In addition to this requirement, the Legislature mandated that certain statutory notifications must be made to the buyer in a real estate disclosure form. Chapter 5-20.8-2, states in pertinent part that the disclosure form shall include the following information:

> Zoning -- (Permitted use, Classification) "Buyers of real estate in the state of Rhode Island are legally obligated to comply with all local real estate ordinances; including, but not limited to, ordinances on the number of unrelated persons who may legally reside in a dwelling, as well as ordinances on the number of dwelling units permitted under the local zoning ordinances." <u>If the subject property is located in a historic district, that fact must be disclosed to the buyer, together with the notification that "property located in a historic district may be subject to construction, expansion or renovation limitations. Contact the local building inspection official for details."</u>

R.I.G.L. § 1956 Title 5 chapter 5-20.8-2 (b)(2)(xxiii) (emphasis added).

The Rhode Island statute, like those in many other jurisdictions, provides buyers with an opportunity to have full knowledge of the existing conditions of the property prior to signing a purchase and sales agreement. Where a seller fails to disclose a materially deficient condition on the property of which the seller is aware, the Rhode Island statute provides the buyer with the right to void the sale and recover his/her deposit. The statute states: "If prior to closing but after execution of an agreement to transfer, the buyer discovers that a materially deficient condition exists which has not been disclosed to the buyer, then the buyer may elect to: (1) Terminate the agreement to transfer in which case the buyer shall receive all deposits paid by the buyer to the seller or his or her agent pursuant to the agreement." R.I.G.L. § 1956 Title 5 chapter 5-20.8-2(b)(1). The Rhode Island Statute defines "closing" as, "the time at which real estate is transferred from seller to buyer and consideration is delivered to the seller or to a settlement agent with the intention of imminent delivery upon the recording of pertinent documents and other ministerial acts associated with the settlement." R.I. Gen Laws § 5-20.8-1.

The Rhode Island Statute defines "Deficient conditions" as 'any land restrictions, defect, malfunction, breakage, or unsound condition existing on,

in, across or under the real estate of which the seller has knowledge.' R.I. Gen Laws § 5-20.8-1.

### A. AMERICAN'S FAILURE TO DISCLOSE THAT THE 3 PARCELS OF PROPERTY WERE LOCATED IN THE NEWPORT HISTORIC DISTRICT AND AMERICAN'S FAILURE TO PROVIDE THE MANDATED STATUTORY LANGUAGE REGARDING THE HISTORIC DISTRICT STATUS IS A MATERIALLY DEFICIENT CONDITION AS A MATTER OF LAW.

American's failure to disclose that the three parcels of real estate were located in the Newport Historic District and its failure to provide the statutory notice language mandated by the legislature constitutes a materially deficient condition under the statute. While the legislature did not define the term "material" in the statute, the statute expressly states that "[i]f the subject property is located in a historic district, the fact must be disclosed to the buyer together, with notification that 'property located in a historic district maybe subject to construction, expansion or renovation limitations. Contact the local building inspection official for details.'" R.I.G.L. § 5-20.8 – 2 (xxiii).

Section (xxiii) is one of the few sections of the statute where the legislature has mandated that the seller use express language to disclose information to a buyer of property. Id. The inclusion of this language by the legislature reflects the legislature's recognition that this is material information that any buyer needs to be aware of prior to signing a purchase

and sales agreement to buy property in a historic district. As the Rhode Island Supreme Court stated in Bellevue Shopping Center Associates v. Chase 574 A.2d 760 (1990) "the historical-area-zoning legislation vests a historic-district commission with authority to prevent construction, alteration, or demolition of buildings in a historic district." Id at 764.

Given that the Newport Historic District Commission is vested with the authority (1) to prevent construction on the 8 acres of land which were the subject of the Agreement for Sale and Purchase including the 1.14 acre parcel of vacant land, and (2) to prevent exterior alteration and/or (3) demolition of the exterior of the mansion and the carriage house which were the subject of the Agreement for Sale and Purchase, how could any reasonable jury conclude that the historic district status was anything but material to any buyer of these 3 parcels of property? If a government commission can prevent you from demolishing your own home and rebuilding it with a design of your own choosing, how could that information not be significant to any buyer? If you can not add on to the exterior of your property or construct and design an exterior of your own choosing while constructing a home or while adding onto an existing home, how can that fact be anything but significant to any buyer? If the mass, the size, and the scale of the design of any new addition or construction is

controlled by a government commission, would not a prospective property buyer consider this information of some importance prior to signing a purchase and sale agreement? The simple answers to these questions can only be yes! The Rhode Island legislature also appears to have recognized this in enacting the mandatory disclosure language for property located within a historic district. See *supra*.

This Court must interpret the Rhode Island Real Estate Sales Disclosure Statute in light of its plain language and underlying policy. "In matters of statutory interpretation [the Supreme Court's] ultimate goal is to give effect to the purpose of the act as intended by the Legislature." Webster v. Perrotta, 774 A.2d 68, 75 (R.I. 2001); see also Gilbane Co. v. Poulas, 576 A.2d 1195, 1196 (R.I. 1990). In interpreting a statutory provision, Rhode Island Courts have stated that they shall adopt the interpretation "most consistent with the statute's policies or obvious purposes." Ocean Road Partners v. State, 670 A.2d 246 (R.I. 1996)(internal citations omitted); see also Health Care Review Inc. v. Shalala, 926 F.Supp. 274, 281 (D.R.I. 1996). The express language of the Rhode Island statute reveals that the intended effect of the statute is to protect the buyer, require full disclosure by the seller and where such disclosure is lacking, the buyer is provided with the ability to void the contract for sale and purchase.

"When the language of a statute is clear and unambiguous, [Courts] must enforce the statute as written by giving the words of the statute their plain and ordinary meaning." Gem Plumbing & Heating Co., Inc. v. Rossi, 867 A.2d 796, 811 (R.I. 2005)(internal citation omitted); see also Ruggiero v. City of Providence, 893 A.2d 235 (R.I. 2006).

Further evidence of the Legislature's intent in requiring mandatory disclosure is found in its repeated use of the term "shall." Rhode Island G.L. § 1956 chapter 5-20.8-2 states that "no later than prior to signing any agreement to transfer real estate, the seller of the real estate **shall** deliver a written disclosure to the buyer…" R.I. G. L. § 5-20.8-2 (a) (emphasis added). Then again in commanding what items much be included in the disclosure form, the legislature states that "the disclosure form **shall** include" a statement that the subject property is located in the Historic District together with specific language instructing the buyer to contact the building inspection official. R.I. G. L. § 5-20.8-2(xxiii) (emphasis added).

Where statutory language comes in terms of the mandatory "shall, which normally creates an obligation impervious to judicial discretion", a Court reading the statute as a whole, must give effect to this plain command. Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach, 523 U.S. 26, 36, 118 S.Ct. 956, 962 (1998), Alabama v. Bozeman, 533 U.S. 146, 153 121

S.Ct. 2079, 2085 (2001) (Supreme Court ruling the "word 'shall' is ordinarily 'the language of command.'") (internal citations and quotations omitted); see also Curtis Inv. Firm, Ltd. Partnership v. Schuch, 321 Ill.App.3d 197, 200 746 N.E.2d 1233 (2001) (finding the use of word "shall" in disclosure statute requires mandatory reading of provision therefore, holding that buyer cannot waive seller's responsibility to disclose certain defects by signing contract without receipt of written disclosure statement).

In the instant case, the only interpretation of the Rhode Island Real Estate Disclosure Statute which is consistent with the legislature's policy of protecting buyers and requiring sellers to disclose the historic district status of property, is to hold that the failure to disclosure historic district status and to provide the mandated statutory disclosure language, constitutes a materially deficient condition as a matter of law.

**1. The Failure Of American To Disclose The Historic District Status And The Mandatory Statutory Language Required By The Real Estate Disclosure Statute Was Material To The Blixseths**

Timothy Blixseth's Answer to American Capital Interrogatory 13(attached hereto as Exhibit I), makes clear, the Blixseths would not have agreed to purchase the 3 parcels of property known as Miramar if they had known that the 3 parcels of property were located in the Newport Historic District and that any new construction or exterior renovation on the 3

properties was subject to the approval of the Newport Historic District Commission which could prevent any such construction or expansion. Further, the Affidavit of Timothy Blixseth establishes that he planned to renovate and build on the property. See Exhibit G. Moreover, one of the 3 parcels of property is a vacant building lot. Any construction on that lot would be regulated by the Newport Historic District Commission.

Given the Blixseths plans to build and to renovate the exterior of the property and the authority of the Historic District Commission to prevent construction or to limit the mass, the size and the scale of any new construction or exterior modifications on the 3 lots, no reasonable juror could conclude that the failure of American to provide the mandated historic district disclosures was anything but a materially deficient condition under the Real Estate Disclosure statute.

In addition, given that the Historic District Commission could prevent the Blixseths from demolishing any of the structures on 2 of the parcels of property, and American's failure to provide the mandated disclosures, no reasonable juror could conclude that this information was not material to the Blixseths.

### 2. The Undisputed Facts Reveal That The Blixseths Met The Remaining Requirements Under The Real Estate Disclosure Statute To Void The Agreement and Recover Their Deposit

The two Real Estate Disclosure Forms delivered by American to the Blixseths on or about November 18, 2005 failed to disclose that the 3 parcels of property were located in the Newport Historic District and failed to include the statutory language required by R.I. G.L. c. 5-20.8-2 (2) (xxiii). American admits that it knew the properties were located in the Newport Historic District and subject to the rules and regulations of the Newport Historic District Commission. American admits that Blixseths counsel, Andrew Hawes, sent a letter dated March 10, 2006 to Andrew Panteleakis, president of American, wherein the Blixseths purported to void the Agreement for Sale and Purchase dated November 23, 2005 and requested a return of the Blixseth's $1.25 million deposit. See Letter Dated March 10, 2006, Attached as Exhibit S. Neither transfer of the title nor payment for the 3 properties had occurred prior to the March 10, 2006 statutory demand for a return of the Blixseths' deposit. Under the circumstances the Blixseths have complied with the statutory requirements necessary to void the Agreement and to receive a return of their deposit.

### 3. The Applicable Law Regarding American Capital Corporation Directors' Failure To Approve the Sale As Required By Rhode Island Law

The following statutes made clear that only the Board of Directors of a Rhode Island corporation can authorize the sale of all or substantially all the property of a corporation.

**7-1.2-1101. Sale of assets in regular course of business and mortgage or pledge of assets.**

The sale, lease, exchange, or other disposition of all, or substantially all, the property and assets of a corporation in the usual and regular course of its business, and the mortgage or pledge of any or all property and assets of a corporation, whether or not in the usual and regular course of business, may be made upon terms and conditions and for any consideration, which may consist in whole or in part of money or property, real or personal, including shares of any other corporation, domestic or foreign, as is authorized by its board of directors; and in any case no authorization or consent of the shareholders is required.

**7-1.2-1102. Sale of assets other than in regular course of business.**

A sale, lease, exchange, or other disposition of all, or substantially all, the property and assets, with or without the good will, of a corporation, if not in the usual and regular course of its business, may be made upon terms and conditions and for any consideration, which may consist in whole or in part of money or property, real or personal, including shares of any other corporation, domestic or foreign, as is authorized in the following manner:

(a) The board of directors' adoption or a resolution recommending the sale, lease, exchange, or other disposition, and directing the submission of the resolution to a vote at a meeting of shareholders, which may be either an annual or a special meeting.

(b) Written notice must be given to each shareholder, whether or not entitled to vote at the meeting, not less than twenty (20) days before the meeting, in the manner provided in this chapter for the giving of notice of meeting of

shareholders. The notice must state whether the meeting is an annual or a special meeting, and that the purpose, or one of the purposes, is to consider the proposed sale, lease, exchange, or other disposition. A statement of the shareholder's right to dissent and a copy or summary of § 7-1.2-1202 must be included in or enclosed with the notice.

(c) At the meeting the shareholders may authorize the sale, lease, exchange, or other disposition and may fix, or may authorize the board of directors to fix, any or all of the terms and conditions of it and the consideration to be received by the corporation for it. The authorization requires the affirmative vote of the holders of a majority of the shares of the corporation entitled to vote on the authorization, unless any class of shares is entitled to vote on it as a class, pursuant to the articles of incorporation, in which event approval of the resolution also requires the affirmative vote of the holders of a majority of the shares of each class of shares entitled to vote as a class on the resolution.

R.I. G.L. c. 7-1.2-801 (a) Board of Directors, provides that the affairs of a corporation are managed by the Board of Directors.

R.I. G.L. c. 7-1.2-804 Vacancies provides as follows:

**7-1.2-804. Vacancies.**

Any vacancy occurring in the board of directors may be filed by the affirmative vote of a majority of the remaining directors though less than a quorum of the board of directors. A director elected to fill a vacancy is elected for the unexpired term of his or her predecessor in office. Any directorship to be filled by reason of an increase in the number of directors may be filled by the board of directors for a term of office continuing only until the next election of directors by the shareholders. **If at any time, by reason of death, resignation or other cause, a corporation should have no directors in office, then any officer or any shareholder or an executor, administrator, trustee or guardian of a shareholder, or other fiduciary entrusted with like responsibility for the person or estate of a shareholder, may call a special meeting of shareholders in accordance with the provisions of the articles of incorporation or the bylaws, or may apply to the superior court for a decree summarily ordering a meeting for the purposes of conducting an election.**

R.I. G.L. c 7-1.2-805 Removal of Directors sets forth the law in Rhode Island for removal of a director of a corporation.

Nothing in the above statutes authorizes an individual with power of attorney to act as a director of a corporation. Further, the general rule of law is that the "directors of a corporation generally cannot vote at directors' meetings by proxy, but must be personally present and act themselves. "Fletcher Cyclopedia of the Law of Corporations, Chapter 11 § 427 Voting By Proxy. A director's "personal judgment is necessary, and they cannot delegate their duties or assign their powers" Id. One would presume that the basis for this rule of law is that directors of a corporation stand in a fiduciary relationship towards its stockholders Point Trap Co. v. Manchester 98 RI 49, 199 A 2d 592 (1964) (a director of a corporation stands in a fiduciary relationship to the stockholders).

In an action for breach of contract, the plaintiff must establish that any breach of contract by a defendant was the proximate cause of damage to the plaintiff. Chrabaszcz v. Johnston School Committee 474 F. Supp. 2d 298 (2007).

**4. <u>American Was Not Able To Convey The 3 Miramar Properties To The Blixseths As The Board off Directors Never Approved The Sale And Thus American Has No Reasonable Expectations Of Establishing That The Blixseths Caused American Any Damages</u>**

The undisputed facts reveal that American Capital was not ready willing and able to sell the three properties know as "Miramar" on January 17, 2006 the day set for the closing. The board of directors of American Capital Corporation never voted to approve the sale or the Agreement for Sale and Purchase as required by Rhode Island law.

Rhode Island 1956, § 7-1.2 – 1101 & 1103 requires the Board of Directors to approve the sale of all or substantially all the property and assets of a corporation. Miramar was all or substantial all of the property and assets of American Capital Corporation in 2006. Andrew Panteleakis who was the sole director for American Capital Corporation was incapacitated in 2005 and 2006 and did not vote to authorize the sale of "Miramar". Instead Nancy Wadell signed Andrew Panteleakis name as the sole director of American Capital Corporation to a "Certificate of Corporate Authority and "Incumbency" dated January 11, 2006, authorizing the sale of Miramar pursuant to the Agreement of Sale and Purchase dated November 23, 2005. Wadell claimed to have authority to act as the sole director of the corporation through a durable power of attorney granted to her by Andrew

Panteleakis. Under Rhode Island law Wadell, however, had no authority to vote as a director of American Capital Corporation as she was never elected as a director as required by Rhode Island law.

Wadell's act in signing Panteleakis' name was of no consequence. Nothing in Rhode Island statutes regarding corporate directors provides for an individual with power of attorney to act as a proxy for a director of a corporation.

As American's directors never voted to approve the sale of substantially all the assets of American Capital to the Blixseths, American was never able to sell the Miramar property to the Blixseths and has no reasonable expectation of proving that the Blixseths caused it any damage. As such the Blixseths are entitled to summary judgment on American's complaint.

## **Conclusion**

The undisputed facts reveal that the Blixseths are entitled to summary judgment on American's Complaint and on Count I of the Blixseths' counterclaim for the following reasons:

(1)(a). American knew that the 3 properties at issue were located in the Newport Historic District and that the properties were subject to the rules and regulations of the Newport Historic District but failed to disclose the

Historic District status and to provide the statutorily mandated language required by c. 5-20.8 in the 2 real estate disclosures provided to the Blixseths prior to the signing of the Agreement for Sale and Purchase;

(1)(b). the failure to provide the above disclosures constitutes a materially deficient condition pursuant to c. 5-20.8 as a matter of law;

(1)(c). even if the failure to provide the c. 5-20.8-2 (xxiii) disclosures was not material as a matter of law the undisputed facts reveal it was material to the Blixseths;

(1)(d). by letter dated March 10, 2006, the Blixseths voided the contract and requested a return of their deposit as required by the statute;

(2). American has no reasonable expectation of proving that any alleged breach of contract by the Blixseths was the proximate cause of any damage to American as American was not ready, willing, and able to convey the property as provided for by the Agreement for Sale and Purchase as the Board of Directors for American never voted to authorize the sale of the 3 properties as required by Rhode Island law.

Respectfully submitted
TIMOTHY AND EDRA BLIXSETH
By Their Attorneys,
CAMPBELL CAMPBELL EDWARDS & CONROY
PROFESSIONAL CORPORATION

*/s/ Brian P. Voke*
Brian P. Voke, Esquire (RI Bar #: 4953)
One Constitution Plaza
Boston, MA 02129
Phone: 617-241-3042
Fax: 617-241-5115

**CERTIFICATE OF SERVICE**

I hereby certify that a true copy of the above document was served upon the attorney of record by electronic mail on June 5, 2007.

*/s/ Brian P. Voke*
Brian P. Voke, Esquire