**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **AMERICAN CAPITAL CORPORATION,** | ) | |
| | ) | |
| **Plaintiff** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | **C.A. No. 06-90S** |
| **TIMOTHY L BLIXSETH; EDRA BLIXSETH;** | ) | |
| **and MORTGAGE GUARANTEE & TITLE CO.** | ) | |
| | ) | |
| **Defendants** | ) | |
| | ) | |

# The Blixseths Memorandum In Reply to American Capital Corporation's Opposition to The Blixseth's Motion for Summary Judgment

## THE FAILURE BY AMERICAN CAPITAL CORPORATION TO DISCLOSE THE HISTORIC DISTRICT ZONING FOR THE MIRAMAR PROPERTY IS THE FAILURE TO DISCLOSE A MATERIAL DEFICIENT CONDITION AS DEFINED BY THE REAL ESTATE DISCLOSURE ACT

### UNDER THE ACT ANY LAND RESTRICTION IS A DEFICIENT CONDITION

The Real Estate Disclosure Act (the "Act") defines a "deficient condition" as "any land restrictions, defect, malfunction, breakage or unsound condition existing or in across or under the real estate R.I.G.L. 1956 §5-20.8-1. (emphasis added) The legislature's use of the term "any land restrictions" plainly means what it says and includes any and all land restrictions on the property. The term "any land restrictions" being all inclusive would necessarily include land restrictions imposed by contract, deed or common law, by the "plat" or "plot" plan of the property approved by a city or town, and by restrictions

placed on the property by the government such as zoning and historic district zoning. See 1 infra.

The disclosure form mandated by the Act reflects the legislative intent that any and all known restrictions on the property including deed restrictions, plat restrictions and governmental restrictions such as historic district zoning, be conveyed to the buyer in the disclosure form. This is evidenced by the following disclosure requirements under G.L. 1956 §5-20.8-2(b)(2):

> (xxi) Easements and Encroachments – The seller of that real estate is required to provide the buyer with a copy of any previous surveys of the real estate that are in the seller's possession and notify the buyer of any known easements, encroachments, covenants or restrictions of the seller's real estate. A buyer may wish to have a boundary or other survey independently performed at his or her own expense.[1]
>
> (xiii) Zoning – (Permitted use, Classification) "Buyers of real estate in the state of Rhode Island are legally obligated to comply with all local real estate ordinances; including, but not limited to, ordinances on the number of unrelated persons who may legally reside in a dwelling, as well as ordinances on the number of dwelling units permitted under the local zoning ordinances. If the subject property is located in a historic district, that fact must be disclosed to the buyer, together with the notification that "property located in a history district may be subject to construction, expansion or renovation limitations. Contact the local building inspection official for details."[2]

---

[1] "Easement" is defined as "[a] right of use over the property of another. Traditionally the permitted finds of uses were limited, the most important being rights of way and rights concerning flowing water. The easement was normally for the benefit of adjoining lands, no matter who the owner was (as easement appurtenant) rather than a benefit for a specific individual. (easement in progress) The land having the right of use as an appurtenance is known as the dominant tenement and the land which is subject to the easement is known as the servient tenement. Black's Law Dictionary Abridged, Fifth Edition.

[2] G.L. §5-20.8-2(b) (2) (xxiii) does not require the seller to disclose all of the zoning regulations which pertain to the property. Instead the legislature has prescribed statutorily mandated notice language which the seller must use to alert the buyer that zoning including historic district zoning imposes restrictions on the owner's use of his property.

(xxiv) Restrictions – (Plat or Other)[3]

With respect to the restrictions placed on property within a historic district zone in Rhode Island, the Real Estate Disclosure Act places two obligations on a seller. The first obligation is for the seller to disclose (if known) whether the property is within a historic district zone and thus subject to historic district zoning. The second requirement imposed by the Act on the seller is that the seller disclose to the buyer that since the property is subject to historic district zoning, it may have limitations which restrict the buyer's use of the property and the buyer should check with the local building official for details.

**HISTORIC DISTRICT ZONING IS WELL RECOGNIZED AS A LAND RESTRICTION**

Notwithstanding American Capital Corporation's argument to the contrary, zoning including historic district zoning is well recognized as a land restriction. Almost 30 years ago the United States Supreme Court in Penn Central Transportation Co. v. City of New York, 98 S.CT 2646, 438 U.S. 104, 112, 113, 57 L.Ed. 631 (1978) recognized that historic district legislation by its very nature places land restrictions and controls over an owners use of his land. The court also noted that by operation of law "historic district legislation and zoning laws regulate all properties within given physical communities" Id at 438 U.S. at 132. Numerous other courts and at least one state senate discussed historic district zoning and uniformly recognize historic district zoning as a land restriction. see e.g. W.J. Bohannan v. The City of San Diego, 30 Cal.App.3d 416 (Cal. Ct. App. 1973); City of Albany v. Coyne, 159 A.D.2d 73 (Sup. Ct. App. NY 1990); A S P Associates v. City of Raleigh, N.C., 258 S.E.2d 444 (Sup. Ct. of N.C.

[3] "Plat" is defined as, "A map of a town, section, or subdivision showing the location and boundaries of individual parcels of land subdivided into lots, with streets, alleys, easements, etc. usually drawn to scale. Black's Law Dictionary Abridged, Fifth Edition.

1079); Lafayette Park Baptist Church v. Scott, 553 S.W.2d 856 (Mo. Ct. App. 1977); Broadview Apartments Company v. Commission for Historical and Architectural Preservation. 433 A.2d 1214 (Ct. of Sp. App. MD 1981); Matter of the Society for Ethical Culture in the City of New York v. Spatt, 415 N.E.2d 922 (App. Ct. NY 1980); International College of Surgeons v. City of Chicago, 1997 WL 6729 (N.D.Ill.); United Artists' Theater Circuit, Inc v. City of Philadelphia, 635 A.2d 612 (Sup. Ct. Penn. 1993); Int'l College of Surgeons, 1992 WL 6729 (N.D. Ill. 1992); G Street Associates v. Dep't of Housing and Community Development, 430 A.2d 1387 (D.C. App. Ct. 1981); Andrews v. Planning and zoning Commission of the Town of Wallingford, 904 A.2d 275 (App. Ct. Conn. 2006); Trustee of the Sailors' Snug haror in the City of New York v. Platt et al., Constituting the Landmarks Preservation Commission, 29 A.D.2d 376 (Sup. Ct. App. Div. NY 1968); Society for Ethical Culture In the City of New York v. Spatt, 415 N.E.2d 922 (Ct. of App. NY 1980); The Rector, Wardens, and Members of the Vestry of St. Bartholomews' Church v. The City of New York, 914 F.2d 348 (2d Cir. 1990); Opinion of the Justices to the Senate, 128 N.E. 2d 557 (Mass. S.J.C. 1955); Donnelly Associates v. District of Columbia Historic Preservation Review Board, 520 A.2d 270 (D.C. App. Ct. 1987).

The Penn Central case is just one of a long line of Supreme Court cases that recognize zoning as a land restriction. see e.g. Village of Euclid v. Ambler Realty Co., 272 U.S. 365, 47 S Ct. 114, 71 L. Ed 303 (1926); Nectow v. City of Cambridge, 477 U.S. 183 – 188, 48 S. Ct. 447, 72 L. Ed. 842 (1928); Thomas Cusack Co. v. City of Cambridge, 242 U.S. 526, 37 S. Ct. 190, 61 L. Ed. 472 (1971); Eubank v. City of Richmond, 226 U.S. 137, 33 S. Ct. 76, 57 L. Ed. 156 (1912); Washington ex rel. Seattle

Trust Co. v. Roberge, 278 U.S. 116, 49 S. Ct. 50, 73 L. Ed 210 (1928). As the Supreme Court stated almost 80 years ago in Nectow v. City of Cambridge 477 U.S. 183, 188, 48 S.Ct. at 72 L. Ed. At 844 (1928) "[t]he government power to interfere by zoning regulations with the general rights of the land owner by restricting the character of his use, is not unlimited and other questions aside, such restriction cannot bear a substantial relations to the public health, safety, morals, or general welfare."

**RHODE ISLAND HAS ALSO CLEARLY RECOGNIZED ZONING AS A LAND RESTRICTION**

The Rhode Island Supreme Court recognizes zoning as a land restriction. More than 40 years ago in Ciunciarulo v. Tatro 91 R.I. 352, 358-359 168 A 2d 719 (1961) the Rhode Island Supreme Court recognized zoning as a land use restriction and stated as follows: "[t]he reason for the statutory requirement of a comprehensive plan is to avoid an arbitrary, unreasonable or capricious exercise of the zoning power, resulting in haphazard or piecemeal zoning (cite omitted). Essentially then such provision is designed to reduce the impact of zoning restrictions on the right of an owner to make a free use of his land by barring any radical or impulsive exercise of the power conferred." Id at 358, 359. Also in Hadley v. Harold Realty Co. 97 RI 403, 198 A. 2d 149 (1964) the Rhode Island Supreme Court discussed the land restrictions imposed by zoning. "[A comprehensive zoning plan] must of necessity be a scheme or formula of zoning that reasonably relates that regulation and restriction of land uses and the establishments of districts there for to the health, safety, and welfare of the public and thus to the police power." More recently the Rhode Island Supreme Court stated in Bourque v. Bettore, Jr., et al 589 A2d 815, 820 (RI, 1991) that "[a] general principal to be drawn from Eubank, Cusack, and Roberge is that the government's power to interfere with the general rights

of a landowner by restricting the character of his use is not unlimited and any restriction upon his use can not be imposed unless it bears a substantial relation to the public health, safety, morals, or general welfare." In L.A. Ray Realty v. Cumberland 698 A. 2d 202, 216 (RI, 1997, Judge Flanders in a dissenting opinion cited Village of Euclid v. Ambler Realty Co. 272 U.S. 365, 47 S. Ct 114, 71 L. Ed. 303 (1926) and Nectow v. City of Cambridge, 277 U.S. 183, 48 S. Ct. 447, 72 L. Ed. 842 (1928) and stated "[t]he governmental power to interfere by zoning regulations with the general rights of the land owner by restricting the character of his use, is not unlimited, and other questions aside such restriction cannot be imposed if it does not bear a substantial relation to the public health, safety, morals, or, general welfare" Nectow 277 U.S. at 188, 48 S. Ct. at 448, 72 L. Ed. at 844 (emphasis added).

As the above cases make clear zoning, including historic district zoning, imposes restrictions on property located within a historic district zone. The notion that zoning imposes restrictions on property is after all commonly recognized under the law. Further, the law presumes that the legislature which approved the Historic District zoning statute in Rhode Island was well aware of those zoning restrictions when it required through the Real Estate Disclosure Act that sellers of property disclose whether the property was located in a historic district zone and provide notice to the buyer of the limitations imposed on property located in historic district zones. See, Loretta Realty Corp. v. Massachusetts Bonding & Ins. Co., 114 A.2d 846, 849 (R.I.1955).

## HISTORIC DISTRICT ZONING IS A LAND RESTRICTION UNDER THE ACT AND TO HOLD OTHERWISE WOULD BE CONTRARY TO THE CLEAR LEGISLATIVE INTENT OF THE ACT

A historic district is by its very nature a special zoning district with restrictions on the owner's use of the property. The legislature obviously recognized that the zoning restrictions imposed on property within a historic district may impose unexpected burdens on an owner's use of her/his property and thus mandated sellers to disclose this when selling property located within a designated historic district zone.

Notwithstanding American Capital Corporation's contention to the contrary, the fact that the Miramar property is located within a historic district zone, means that there are restrictions on the owner's use of the property. The language of the Act clearly requires that the seller disclose whether the property is located within a historic district zone, because of the restrictions necessarily imposed on any property located within a historic district zone. The Act's definition of "deficient condition" to include "any land restrictions" should be read in conjunction with the statute as a whole so that the legislature's disclosure requirements with respect to the historic district status of a property will not be rendered inoperative, superfluous or insignificant. See Meriol v. New England Tel. & Tel. Co. 110 RI 149, 290 A 2d 907 (1972); Brennan v. Kirby 529 A2d 633, 637 RI (1987). Interpreting the Act to include the failure to disclose historic district zoning as a deficient condition gives effect to the legislature's intended purpose of full disclosure regarding historic district zoning and is the interpretation which is most consistent with the statute's policies and obvious purpose of alerting buyers to the restrictions imposed on properties in historic district zones. Ocean Road Partners v. State

670 A 2d 246 (RI 1996); Health Care Review Inc. v. Shalala 926 F. Suppl 274, 281 (D.R.I. 1996)

American Capital Corporation's contention that the court should limit the land restrictions that must be disclosed, to those restrictions enumerated in §5-20.8-2(b)(xxi) and (xxiv) and to ignore land restrictions imposed by zoning would render the legislature's disclosure requirements with respect to the restrictions and limitations imposed by historic district zoning as inoperative and meaningless. American Capital Corporation's interpretation of the Act would also render inoperative, superfluous and insignificant the legislature's use of the term "any land restrictions." If as American Capital Corporation contends, the legislature intended to limit "deficient conditions" to land restrictions imposed by deed, contract or plat plans filed with a city or town and to exclude land restrictions imposed by the government, why is that not stated in the Act and why did the legislature use the term "any land restrictions" and require sellers to disclose historic district zoning?

Contrary to American Capital Corporation's contention, the instant court would not be construing the statute in a manner that leads to an absurd result, if it interprets the term "deficient condition" to include the failure by the seller to disclose the mandatory historic district zoning information and other zoning information specified by the Act. The legislature mandated that sellers disclosure limited but specific information with respect to zoning because zoning including historic district zoning limits/restricts what property owner may do with his property.[4]

---

[4] Hadley v. Harold Realty Co. 97 RI 403, 198 A 2d 149 (1964) cited by American Capital Corporation in its opposition specifically recognizes zoning as a land restriction on property.

Interpreting the Act to include as a "deficient condition" the failure by a seller to disclose that property is located within a historic district zone and to provide the historic district notice language mandated by the Act, effectuates the legislature's intended purpose by giving effect to the historic district disclosure requirements. To interpret the Act as suggested by American Capital Corporation that the Act provides no remedy for a seller's failure to disclose that property is located within a historic district would effectively render the legislature's mandated disclosures regarding properties subject to historic district zoning as meaningless. Clearly this was not the legislature's intent in enacting this legislation.

**WEBSTER COLLINS APPRAISAL REPORT IS IRRELEVAN TO THE ISSUE OF WHETHER AMERICAN CAPITAL CORPORATION'S FAILURE TO DISCLOSE THE HISTORIC DISTRICT ZONING IS A MATERIALLY DEFICIENT CONDITION**

American Capital Corporation's contention that there is a material issue of fact in dispute as to whether its failure to disclose the historic district zoning for the Miramar property is a failure to disclose a materially deficient condition, is without merit. American Capital Corporation points to the Appraisal Consulting Report of Webster Collins and Collins conclusion that properties in historic districts are generally worth more then similarly situated properties outside of historic districts, for the proposition that no reasonable person could conclude that the failure to disclose the historic district zoning was a materially deficient condition under the Act. Whether the sales price of property located in a historic district zone is higher or lower than a similarly situated property outside a historic district zone is irrelevant. The issue (assuming an objective standard applies) is whether the land restrictions imposed by historic district zoning would be material to the deliberation of any reasonable person prior to entering into a

contract to purchase real estate. Clearly, no reasonable jury could conclude that the restrictions imposed by Newport Historic District Zoning would not be material to the deliberations of any buyer of Miramar. After all any buyer would want to know that among the many restrictions of historic district zoning the owner of property in a historic district is restricted from demolishing her/ his home.

**IF THE ISSUE OF MATERIALITY IS A SUBJECTIVE STANDARD RATHER THAN AN OBJECTIVE STANDARD THE UNDISPUTED FACTS REVEAL THAT THE BLIXSETHS DID NOT KNOW OF THE HISTORIC DISTRICT ZONING AND WOULD NOT HAVE SIGNED THE AGREEMENT FOR SALE AND PURCHASE.**

American Capital Corporation's contention that if the issue of "materiality" is determined by a subjective standard rather than an objective standard there is an issue of fact, as to whether its failure to disclose the historic district zoning for Miramar to the Blixseths was "material" is equally without merit. American Capital Corporation relies on disclaimer language in the agreement for purchase and sale that the purchasers shall take subject to existing "zoning laws" as evidence that the Historic District Zoning was not relevant to the Blixseths purchase. The undisputed facts reveal however, that the Blixseths knew nothing about the Historic District Zoning before signing the agreement for purchase and sale. Consequently, the inclusion of this provision in the agreement has no relevance as to whether the issue of historic district zoning was material to the Blixseths. American Capital Corporation further points to paragraph 7 of the agreement for sale and purchase which provided the Blixseths with a set period of time to investigate the property to determine whether the existence of any local, state or federal ordinances, laws, or restrictions would unduly interfere with Purchasers use of the property as allowed in an R60 zone and that the Blixseths did not notify American

Capital Corporation of any objection within the allowed time, as evidence that the historic district zoning of the Miramar property was not material to the Blixseths.

Again, American Capital Corporation's argument rings hollow as the undisputed facts are that the Blixseths did not know about the Historic District Zoning for the property. American Capital Corporation's contention that the Blixseths failed to conduct any independent due diligence with regard to applicable zoning is an overstatement and is untrue. While Andrew Hawes, real estate counsel for the Blixseths, may not have reviewed the R-60 zoning after his clients signed the agreement for sale and purchase he testified he reviewed the R60 zoning for the property prior to the Blixseths signing the agreement for sale and purchase.(Hawes deposition 1/04/07 pages 34-35) In any event the fact that the Blixseths did not discover that Miramar was subject to historic district zoning in no manner raises an issue of fact as to whether they would have entered into the agreement for sale and purchase if they had known the property was subject to historic district zoning restrictions.

**AMERICAN CAPITAL CORPORATION'S CONTENTION THAT THE BLIXSETHS HAD NO RIGHT TO VOID THE AGREEMENT UNDER G.L. 1956 §5-20.8-4 BECAUSE THEY FAILED TO CLOSE ON JANUARY 17, 2006 IS WITHOUT MERIT**

The Act clearly allows a buyer to void an agreement to transfer real estate any time prior to paying consideration and accepting the deed if the seller fails to disclose a materially deficient condition known to the buyer. G.L.1956 5-20.8-4. This is precisely what the Blixseths did. American Capital Corporation argues, however, that even if it violated the ACT by failing to disclose a materially deficient condition (the historic district zoning for Miramar) the agreement for sale and purchase should not be void because the Blixseths did not learn of the misrepresentations by American Capital

Corporation in the real estate disclosure forms prior to the date set for closing by the parties and the Blixseths failed to close on the property on that date of January 17, 2006.

First, the Act unequivocally permits the Blixseths to void the agreement of sale and purchase of the Miramar property if American Capital Corporation failed to disclose a materially deficient condition of which it had knowledge. The Act in no manner renders the Blixseths right to void the agreement to transfer conditional upon any other fact. "[W]hen the language of a statute is clear and unambiguous, this Court must interpret the statute literally and must give the words of the statute their plain and ordinary meanings." Sindelar v. Leguia, 750 A.2d 967, 970 (R.I.2000). In this case the court should follow the clear language of the statute and hold that the Blixseths properly exercised their right to void the contract.

Second, the language of the Act is consistent with the well established common law that where one party induces another to enter into a contract by a material misrepresentation, even an innocent misrepresentation, the latter may rescind the contract. Halpert v. Rosenthal, 107 R.I. 406, 412-413, 267 A.2d 730,733 - 734 (R.I. 1970). As the court stated in Halpert supra,"It is not necessary, in order that a contract may be rescinded for fraud or misrepresentation, that the party making the misrepresentation should have known that it was false. Innocent misrepresentation is sufficient, for though the representation may have been made innocently, it would be unjust and inequitable to permit a person who has made false representations, even innocently, to retain the fruits of a bargain induced by such representations.'" Halpert v. Rosenthal, 107 R.I. 406, 412-413, 267 A.2d 730,733 - 734 (R.I. 1970). (Dealing with a real estate contract the defendant attempted to terminate when termites were discovered,

allowing defendant's counterclaim for return of deposit). See *St. Paul Fire & Marine Insurance Co. v. Russo Brothers, Inc.*, 641 A.2d 1297, 1299 (R.I.1994); See *Continental Illustrating Co. v. Longley Motor Sales Co.*, 43 R.I. 552, 553, 113 A. 869, 869-70 (1921); Zaino v. Zaino, 818 A.2d 630, 636 (R.I.2003). Since the Blixseths were induced to enter into the agreement for sale and purchase by the misrepresentations of American Capital Corporation in failing to disclose the historic district zoning, American Capital Corporation can not claim the "fruits of the bargain" induced by its own misrepresentation. To allow American Capital Corporation to claim the benefits of the contract when it violated the Act would be unjust and inequitable and in contravention of the plain language of the Act.

**AMERICAN CAPITAL CORPORATION'S CONTENTION THAT THE BLIXSETHS WAIVED THEIR RIGHTS TO VOID THE AGREEMENT FOR SALE AND PURCHASE IS WITHOUT MERIT**

American Capital Corporation's contention that the Blixseths waived their rights to void the agreement for sale and purchase because the agreement contains a waiver provision waiving any right to rescind the contract is without any basis in law or fact. The Act itself allows the Blixseths to rescind the entire agreement for sale and purchase including paragraph 20 of the contract which is the waiver provision upon which American Capital Corporation relies. Since the Act allows the Blixseths the right to void the entire contract including the waiver paragraph it is also void under the Act. American Capital Corporation can not very well cite to the waiver provision which is void in the contract to support a claim of waiver.

American Capital Corporation's contention that the Blixseths waived their rights under the Act to void the agreement for sale and purchase by not discovering at an earlier

date that Miramar was subject to historic district zoning is equally flawed. As previously discussed the language of the Act is unequivocal and unconditionally allows a buyer such as the Blixseths to void the agreement if the seller fails to disclose a materially deficient condition of which the seller has knowledge. Pursuant to the Act, American Capital Corporation had a duty to disclose the historic district zoning on the Miramar property and the Blixseths had no duty under the Act to discover this information. The fact that the Blixseths were ignorant of this information does not constitute negligence which excuses American Capital Corporation's conduct and allows it to reap the fruits of the bargain of the contract. The law in Rhode Island is well established that when one induces another by means of a material misrepresentation to enter into a contract, the former may not retain the fruits of the bargain induced by such misrepresentation. Halpert v. Rosenthal, 107 R.I. 406, 412-413, 267 A.2d 730,733 - 734 (R.I. 1970). To allow American Capital Corporation to make false representations and then for it to suggest that the Blixseths were negligent in discovering the very information that the Act required American Capital Corporation to disclose would be unjust and inequitable and would be contrary to the Act. Id.

Finally, even if one were to assume the Blixseths were negligent in not discovering that Miramar was subject to historic district zoning (which they were not) a party who fraudulently induces another into entering a contract may not cite the alleged negligence of the other party to excuse his own fraudulent conduct. *See St. Paul Fire & Marine Insurance Co. v. Russo Brothers, Inc.*, 641 A.2d 1297, 1299 (R.I.1994). *See Continental Illustrating Co. v. Longley Motor Sales Co.*, 43 R.I. 552, 553, 113 A. 869, 869-70 (1921).

American Capital Corporation's contention that the Blixseths waived the right to void the agreement for sale and purchase by not terminating the agreement on January 17, 2006 on the basis that American Capital Corporation failed to disclose the historic district zoning for the Miramar properties is equally unavailing. The Blixseths did not terminate the agreement to purchase on January 17, 2006 pursuant to the Act because they did not know of the historic district zoning and they did not know that American Capital Corporation had violated the Act. Timothy Blixseth's affidavit at paragraph 5, Exhibit G to the motion for summary judgment, establishes that Blixseth did not learn of the historic district status of Miramar until early March 2006. Consequently, the Blixseths could not have intentionally relinquished a right in January 2006 when they did not know about it until March 2006.[5]

Further, the clear unequivocal language of the Act permits the Blixseths to void the agreement for sale any time prior to closing on the property by tendering payment and accepting the deed. Finally as discussed above, where one party induces another to enter into a contract by a material misrepresentation, even an innocent misrepresentation, the

---

[5] American Capital's reference in its opposition to the Montalbano affidavit to suggest that he was an agent for the Blixseths with knowledge of the historic district zoning and that his knowledge should be attributed to the Blixseths should be disregarded by the court. Christopher Montalbanos's affidavit (American Capital Corporation exhibit 2) establishes that he is an employee of Mortgage Guarantee and Title Company and that his company was retained to issue a title insurance policy for the Miramar properties. In paragraph 4 of the affidavit he acknowledges that he reviewed a zoning certificate for real estate described in Book 1047 at page 64 which indicated that the real estate described at that page was located in a historic district. The affidavit does not identify which of the 3 separate parcels of real estate he is referring to when he makes this statement. More importantly Montalbano says the recording of the zoning certificate does not affect the insurability of the title. Further, nothing in the affidavit suggests that he was charged with the responsibility of reporting to the Blixseths on the zoning for the property. American Capital Corporation's contention that Montalbano was negligent, in not advising the Blixseths that a parcel of real estate was located in a historic district and, that his negligence can be attributed to the Blixseths is unsupported by any affidavit or pleading and should be disregard by the court.

latter may rescind the contract. Halpert v. Rosenthal, 107 R.I. 406, 412-413, 267 A.2d 730,733 - 734 (R.I. 1970).

**AMERICAN CAPITAL CORPORATION WAS NOT READY WILLING AND ABLE TO CONVEY THE PROPERTIES ON JANUARY 17, 2006 AS IT HAD NO CAPACITY OR POWER TO DO SO SINCE THE BOARD OF DIRECTORS NEVER ADOPTED ANY RESOLUTION RECOMMENDING THE SALE TO THE SHAREHOLDERS FOR A VOTE AND THE SHAREHODERS COULD NOT HAVE VOTED TO APPROVE A RESOLUTION THAT WAS NEVER ADOPTED BY THE DIRECTORS**

---

American Capital Corporation's contention that there is no authority in Rhode Island to support the proposition that under Rhode Island law Nancy Wadell had no authority to vote as a director of American Capital Corporation as she was never elected as a director, ignores Rhode Island's statutory law governing corporations. R.I. G.L. c. 7-1.2-804 Vacancies, explicitly sets forth the procedures that must be followed when a director can no longer hold office. R.I. G.L. c. 7-1.2-804 Vacancies provides as follows:

**-804. Vacancies.**

> Any vacancy occurring in the board of directors may be filed by the affirmative vote of a majority of the remaining directors though less than a quorum of the board of directors. A director elected to fill a vacancy is elected for the unexpired term of his or her predecessor in office. Any directorship to be filled by reason of an increase in the number of directors may be filled by the board of directors for a term of office continuing only until the next election of directors by the shareholders. **If at any time, by reason of death, resignation or other cause, a corporation should have no directors in office, then any officer or any shareholder or an executor, administrator, trustee or guardian of a shareholder, or other fiduciary entrusted with like responsibility for the person or estate of a shareholder, may call a special meeting of shareholders in accordance with the provisions of the articles of incorporation or the bylaws, or may apply to the superior court for a decree summarily ordering a meeting for the purposes of conducting an election.**

Wadell was never elected as a director to fill the vacancy of Panteleakis as provided for by this statute and nothing in the durable power of attorney statute provides that a durable power of attorney permits a director of a corporation to cede his authority as a director to an unelected director.

American Capital Corporation's reference to RI G.L. sec 18-16-7(3) regarding any business enterprise which is solely owned by the principal is irrelevant to this case as the undisputed facts are that Panteleakis did not own the stock of American Capital Corporation. Similarly, American Capital Corporation's assertion that Panteleakis is the sole beneficiary of the Panteleakis Trust is unsupported by any admissible evidence and should be disregarded by the court.[6]

American Capital Corporation's contention on page 28 of its brief that if it lacked the capacity or power to make the conveyance of the real estate to the Blixseths on January 17, 2006 the Blixseths had no standing to object is astounding. If American Capital Corporation had no capacity or power to convey the real estate on January 17, 2006 then it was not ready willing and able to perform the contract and the Blixseths are entitled to summary judgment as a matter of law.

If Wadell had no authority to vote as a director( which she did not since she was never elected as a director) as provided for by Rhode Island law, then American Capital Corporation never complied with RI G.L. 7-1.2-1102 which requires the American Capital Corporation board of directors to adopt a resolution recommending the sale and directing the submission of the resolution to a vote of the shareholders for approval. If there was never a resolution passed by the board of directors the shareholders could not

[6] The names of the beneficiaries of the trust were deleted from the trust document produced in discovery on the grounds that the names of the beneficiaries were confidential until such time as Panteleakis died.

vote to approve a resolution which did not exist and the purported shareholder vote by the trustees was meaningless.

**CONCLUSION**

For the reasons set forth in the Blixseths' motion for summary judgment the court should enter judgment on behalf of the Blixseths.

Respectfully submitted

TIMOTHY AND EDRA BLIXSETH
By Their Attorneys,
CAMPBELL CAMPBELL EDWARDS & CONROY
PROFESSIONAL CORPORATION

*/s/ Brian P. Voke*
Brian P. Voke, Esquire (RI Bar #: 4953)
One Constitution Plaza
Boston, MA 02129
Phone: 617-241-3042
Fax: 617-241-5115

**CERTIFICATE OF SERVICE**

I hereby certify that a true copy of the above document was served upon the attorney of record by electronic mail on August 10, 2007.

*/s/ Brian P. Voke*
Brian P. Voke, Esquire