# EXHIBIT V

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

AMERICAN CAPITAL CORPORATION :
VS. :
TIMOTHY L. BLIXSETH, EDRA BLIXSETH & MORTGAGE GUARANTEE & TITLE COMPANY :

Deposition of ANDREW EDWARD HAWES taken on behalf of the Plaintiff on Thursday, January 4, 2007, at the offices of Hodosh, Spinella & Angelone, One Turks Head Place, Suite 810, Providence, Rhode Island, commencing at 10:00 a.m. before Jane M. Callaghan, a duly commissioned Notary Public within and for the State of Rhode Island and Providence Plantations.

APPEARANCES

HODOSH, SPINELLA & ANGELONE
BY: THOMAS C. ANGELONE, ESQ. ........FOR PLAINTIFF

CAMPBELL, CAMPBELL, EDWARDS & CONROY
BY: BRIAN P. VOKE, ESQ. ............FOR DEFENDANTS



I N D E X

DEPONENT PAGE
ANDREW EDWARD HAWES
EXAMINATION BY MR. ANGELONE ............. 3

E X H I B I T S

FOR PLAINTIFF (FOR ID)

#1 Copy of e-mail dated 9/28/05 .............19
#2 Copy of e-mail dated 10/11/05.............20
#3 Copy of e-mail dated 10/18/05.............21
#4 Copy of e-mail dated 10/18/05.............22
#5 Copy of e-mail dated 10/31/05.............23
#6 Copy of e-mail dated 11/1/05..............25
#7 Copy e-mail dated 11/2/05.................26
#8 Copy of e-mail dated 11/2/05, with attachment..............................27
#9 Copy of e-mail dated 11/3/05..............41
#10 Copy of Zoning Certificate................45
#11 Copy of e-mail dated 11/4/05..............48
#12 Copy of letter cated 2/14/06..............52
#13 Copy of letter dated 11/7/05..............55
#14 Copy of facsimile dated 11/7/05...........59
#15 Copy of e-mail dated 11/10/05.............68
#16 Copy of e-mail dated 11/17/05, with attached Agreement......................82
#17 Copy of Agreement of Sale & Purchase...............................93
#18 Copy of letter dated 3/10/06.............113
#19 Copy of e-mail dated 12/12/05............137
#20 Copy of letter dated 8/25/05.............148

COPY



THURSDAY, JANUARY 4, 2007
(COMMENCING AT 10:00 A.M.)

ANDREW EDWARD HAWES, having been duly sworn by Notary Public, testified as follows:

EXAMINATION BY MR. ANGELONE

Q Mr. Hawes, you're here represented by counsel, so, you know what the rules are, but I will put them on the record, so forgive me for saying it, I'm going to ask you some questions and the stenographer's going to take them down and there'll be a record of this proceeding, and if in the course of this deposition I ask a question and you don't understand it, just tell me and I'll reword it. If you feel that you need to confer with counsel during the course of the deposition, I know the rules don't permit it, but I permit it, and if you want to step outside and talk to counsel concerning a matter that I asked about, feel free to do it and we'll stop the deposition and give you time to confer with counsel and I promise you I won't ask you what you and counsel discussed on the record, but if you do answer a question, I'm going to assume that you understood my question. Is this the first time you've been deposed?



A It is not.
Q How many times have you been deposed?
A I have been deposed, I've been deposed one time.
Q And was that in relation to a transaction in the course of representing the Blixseths?
A It was not.
Q Now, I'd like to know your educational background, please.
A Sure. How far back do you want to go.
Q How about college?
A Okay.
Q I'm happy with that.
A All right, thank you. I graduated from the University of Denver in 1992 where I received a Bachelor of Arts in Political Science; then I attended the University of Idaho College of Law in the Fall of 1992 and graduated in December of 1994.
Q And upon graduation from law school, what did you do next?
A After I graduated from law school I moved to Boise, Idaho, and studied for the February Bar Examination, I passed the February bar exam and soon after, in 1995, I began as an employee of a title company in Boise, Idaho.
Q And what did you do for the title company?

Q Well, what did you mean by "...may affect our use of the property," that you want to review the zoning laws and ordinances that may affect our use?
A Sure. Basically we wanted to have an opportunity to review if there was anything in the existing zoning ordinances that would restrict, prohibit or affect potential uses of this property, as...
Q I'm sorry, finish your answer, I didn't mean to interrupt.
A Well, various uses of the property, I mean, that's what it states.
Q What does "...our use of the property" mean, what were you intending to use the property for?
A Sure. I think --
MR. VOKE: When you say "we," you mean the purchasers or --
MR. ANGELONE: Yes, unless there is somebody else there that I don't know about.
A (Continued) I think you'll find that issue is raised in, I think there's like a November 4th --
Q Let's talk about this one first, we're going to go by the numbers.
A Okay.
Q We'll work our way through it, all right?
A Sure. As explained in the November 4th e-mail which



I think reflects, it refers to this e-mail, basically, it was my understanding that this property would be one of the properties included in the Yellowstone Club World portfolios.
Q So when you say "our use of the property," it meant the property to be used as a destination for a Yellowstone World Club member.
A That's correct.
Q Okay. Doesn't say that in this memo, but that's what you meant, didn't you?
A Right.
Q So what exactly did you do, if anything, regarding reviewing applicable zoning laws and ordinances in accordance with your statement?
A Sure.
Q What did you do?
A Well, I'm going to jump ahead a little bit.
Q Sure.
A Because you asked the question, I guess, if you follow the e-mails, on November 4th you'll see that Guido asked the question as to what do you mean by your intended use and I responded that this may potentially be, or it is my belief, that this would be a facility that would be within the portfolio of the Yellowstone Club World, and during the course of



November 7th and 8th Mr. Salvadore sent to me the ordinance that relates to the designation of this property that would be an R-60, and, so, during the course of November 7th and 8th Mr. Salvadore sent me a copy of the R-60, and over that time period I had an opportunity to discuss with Guido in more detail the nature of the Yellowstone Club World, the business model, how a member becomes to enjoy a right to use the various properties, and it was during this course that there was a conversation that given the uses that I had described as it relates to this facility as a potential Yellowstone Club World site, that those uses would be, in fact, permitted under the existing R-60 designation as a permitted use that would fit inside two boxes, either the private residence or as a yachting organization, and that describes our due diligence review of the zoning.
Q Now, prior to November 2, I've reviewed all of the e-mails, I don't see any reference in any of your e-mails that the Yellowstone World Club is named in the e-mails as a use, that's a fair statement, isn't it?
A In the e-mails it does not contain a reference to Yellowstone Club as a use, the e-mails; it does



refer to myself as counsel for the Yellowstone Club.
Q Now, going back to Exhibit No. 8, which is the -- you've got that?
A Yes.
Q That's the so-called redline version. On page 3 under "Permitted Encumbrances," you took out "Zoning and other regulatory laws and ordinances," and I'm wondering why did you redline Paragraph (b)?
A The reason why I took 6(b) out?
Q Yes, sir.
A Was that I felt that the issue of zoning as far as our due diligence is concerned and our willingness to take a subject to existing zoning laws was added in page 4 where I insert a clause that basically we would have the opportunity to determine whether or not there would be a violation of local, state or federal law, or other such restrictions that would interfere with our intended use of the property.
Q So, in other words, you took out (b), 6(b), on page 3 in conjunction with adding language on page 4 in the middle of the paragraph "...with the Purchasers intended use of the property," right?
A That's correct.
Q Those things are done in conjunction with each other, I'm not trying to put words in your mouth,