UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| AMERICAN CAPITAL CORPORATION | : | |
| | : | |
| v. | : | C.A. No. 06-90 S |
| | : | |
| TIMOTHY L. BLIXSETH and EDRA BLIXSETH | : | |

**PLAINTIFF S RESPONSE REGARDING CERTIFICATION OF QUESTION TO THE RHODE ISLAND SUPREME COURT**

**Introduction**

In accordance with this Court s April 1, 2008, order, Plaintiff, ***American Capital Corporation*** (ACC) addresses below the appropriateness of this Court certifying to the Rhode Island Supreme Court a question regarding the nondisclosure of historic-district zoning under the Rhode Island Real Estate Sales Disclosures Act. R.I. Gen. Laws §§5-20.8-1 to -12. Rule 6(a) of the *Rhode Island Rules of Appellate Procedure* authorizes the Supreme Court to answer a question of law certified to it by a United States District Court when the question [] of law of this state *** may be determinative of the cause then pending in the certifying court and as to which it appears to the certifying court there is no controlling precedent in the decisions of this Court.

ACC shows below that the question whether historic-district zoning regulations are deficient conditions, as that term is defined in the Act, is a question of law that may be determinative of this case and as to which there is no controlling precedent in the decisions of the Supreme Court. Accordingly, it would be appropriate for this Court to certify that question to the Supreme Court.

Once that question has been answered, this Court may have to determine whether the particular historic-district regulations applicable in this case constituted a *materially* deficient condition. R.I. Gen. Laws §5-20.8-4 (emphasis added). Obviously, this latter question would

be presented only if the Supreme Court were to determine that historic-district zoning regulations are deficient conditions under the Act. ACC shows below, however, that this contingent question is not a pure question of law, but requires the resolution of issues of fact, and thus this question would not be appropriate for certification to the Supreme Court.

Finally, ACC attaches to this response its proposed text for the two items required to be included in a certification order: (1) the questions of law to be answered; and (2) a statement of all facts relevant to the questions certified and showing fully the nature of the controversy in which the questions arose. R.I. R. App. P. 6(c).

**Discussion**

**I. Whether historic-district zoning regulations are deficient conditions is an appropriate question for certification because it is a question of law that may be determinative of this case and as to which there is no controlling precedent in the decisions of the Supreme Court.**

The Act defines deficient conditions to be any land restrictions, defect, malfunction, breakage, or unsound conditions existing on, in, across or under the real estate of which the seller has knowledge. § 5-20.8-1(5). The Blixseths argue that [t]he term any land restrictions [is] all inclusive [and] would necessarily include land restrictions imposed *** by restrictions placed on the property by the government such as zoning and historic district zoning. Blixseths Reply Mem. at 1-2. ACC, on the other hand, contends that the term any land restrictions means those restrictions required to be disclosed by §§ 5-20.8-2(b)(xxi) ( easements, encroachments, covenants or restrictions of the seller s real estate ) and 5-20.8-2(b)(xxiv)( Restrictions - (Plat or Other) ), and not generally applicable zoning and building ordinances and regulations. ACC Mem. at 7-8. In support of that argument, ACC observed that the section of the Act that provides for disclosure of a property s location in an historic district does not use the terms land restrictions or restriction to describe zoning or historic-district ordinances or regulations. *Id.*

at 7 (citing §5-20.8-2(b)(xxiv)). Further, ACC pointed out that construing the statute in the manner suggested by the Blixseths would violate the canon of statutory construction that no statute should be construed in a manner that leads to an absurd result here, that the legislature would have deemed to be deficient conditions those zoning regulations that it expressly authorized municipalities to enact to promote and protect the public welfare. *Id.* at 8.

Whether historic-district zoning regulations are deficient conditions as that term is defined in the Act presents a pure question of statutory interpretation. Questions of statutory interpretation are questions of law. *See Rossi v. Employees Ret. Sys.*, 895 A.2d 106, 110 (R.I. 2006) ( statutory interpretation is a question of law ); *Town of N. Kingston v. Albert,* 767 A.2d 659, 662 (R.I. 2001) ( questions implicating statutory interpretation are questions of law ). Further, there is no controlling precedent in the decisions of the Supreme Court that answer this question of law. The only cases decided by the Supreme Court under the Real Estate Sales Disclosures Act are *Bitting v. Grey*, 897 A.2d 25 (R.I. 2006), *Stebbins v. Wells,* 818 A.2d 711 (R.I. 2003), and *Stebbins v. Wells,* 766 A.2d 369 (R.I. 2001). However, none of those cases interpreted the term land restrictions as used in the definition of deficient conditions or examined whether zoning regulations or other applicable governmental statutes or ordinances would constitute deficient conditions under the Act. Rather, *Stebbins* concerned erosion, which the Supreme Court characterized as a possible defect or unsound condition in the land. In *Bitting,* the court held that the plaintiff had no claim for damages under the Act because the legislature did not create a private cause of action for violations of the Act s provisions, and so did not address the plaintiff s contention that the absence of a right to use an abutting right-of-way constituted a deficient condition that was required to be disclosed.

Finally, resolution of this issue of law may be determinative of ACC s cause for damages

for the Blixseths default. While the Blixseths raised a host of defenses to ACC s claim, the only two upon which they moved for summary judgment were their claims that (1) they had a right to terminate the agreement under the Act on the ground that ACC failed to disclose that the property was in the Newport Historic District and (2) that ACC s board of directors had not authorized the execution of the contract of sale. If this Court rejects the second ground for the motion, as it should for the reasons outlined in ACC s memorandum in opposition to the motion, and the Blixseths other defenses and claims are found at trial to be equally lacking in merit, then the issue whether historic-district zoning constitutes a deficient condition will be determinative of ACC s cause, satisfying the final requirement of Rule 6(a).

Accordingly, whether historic-district zoning regulations are deficient conditions is a question that may appropriately be certified to the Rhode Island Supreme Court, in the Court s discretion.

**II. The contingent questions whether the particular historic-district zoning regulations applicable in this case constituted a materially deficient condition and whether the Blixseths waived any right they may have had under the Act to terminate for nondisclosure of the historic-district regulations are not appropriate questions for certification because they are not pure questions of law but require resolution of issues of fact.**

Even if the Supreme Court were to conclude that historic-district regulations constitute deficient conditions, Rule 6(a) does not authorize the Supreme Court to go beyond that question and address whether the particular regulations applicable in this case constituted a *materially* deficient condition under R.I. Gen. Laws §5-20.8-4 (emphasis added). That contingent question would require the Court to resolve disputed issues of fact. *See* ACC Mem. at 9-14. Rule 6 expressly limits the type of questions that may be certified to questions of law, and the Supreme Court has observed that Rule 6 does not permit it to answer a question that requires resolution of an issue of fact. *Wigginton v. Centracchio*, 787 A.2d 1151, 1153 (R.I. 2001).

Here, regardless of whether the test of materiality employs an objective or subjective standard, the parties submissions reveal a genuine issue of material fact. *See* ACC s Mem. at 9-14. ACC s evidence on materiality included ACC s expert s opinion that the location of the property in the historic district adds to its value; the Blixseths agreement to take title to the property subject to all existing building and zoning laws, restrictions and regulations of all governmental authorities ; and the Blixseths failure to exercise their time-limited contractual right to determine whether the existence *** of any local, state, or federal statutes, ordinances, laws or restrictions would unduly interfere with the Purchasers use of the Real Property. *Id.* at 11-12.

Likewise, any question regarding whether the Blixseths waived any right they may otherwise have had under the Act to terminate for nondisclosure of the historic-district may implicate issues of fact. *See Lajayi v. Fafiyebi,* 860 A.2d 680, 687 (R.I. 2004) ( the question of whether a party has voluntarily relinquished a known right is [generally] one of fact . Here, the Agreement expressly provided that Purchasers hereby waive any right to rescind *** this agreement before or after performance and, in addition, the Blixseths failed to exercise their right to object under the Agreement s inspection contingency.

Accordingly, the contingent factual issue whether the particular historic-district zoning regulations applicable in this case constituted a materially deficient condition is not an appropriate question for certification to the Rhode Island Supreme Court.

**Proposed Wording of Certified Question and Statement of Facts**

Rule 6(c) provides that a certification order shall set forth the questions of law to be answered and a statement of all facts relevant to the questions certified and showing fully the nature of the controversy in which the questions arose. The Addendum attached to this

response sets forth suggested text for those two items required by Rule 6(c), should this Court decide to certify the question.

**Conclusion**

For the foregoing reasons, this Court may appropriately certify to the Rhode Island Supreme Court the question whether historic-district zoning regulations are deficient conditions as that term is defined in the Rhode Island Real Estate Sales Disclosures Act.

**AMERICAN CAPITAL CORPORATION**

By its Attorneys,

/s/ Thomas C. Angelone

Thomas C. Angelone, Esq. #1373
**HODOSH, SPINELLA & ANGELONE pc**
One Turks Head Place, Suite 810
Providence, Rhode Island 02903
(401) 274-0200
*Fax* (401) 274-7538
angelonelaw@aol.com

Dated: April 11, 2008

**CERTIFICATION**

I hereby certify that on this 11th day of April, 2008, I caused a copy of the within ***Plaintiff s Response to Certification of Question to the Supreme Court*** to be electronically transmitted to :

Brian P. Voke, Esq.
bvoke@campbell-trial-lawyers.com
Campbell Campbell Edwards & Conroy
One Constitution Plaza, 3rd Floor
Boston, MA 02129

/s/ Thomas C. Angelone
Thomas C. Angelone, Esq.

**Addendum**

1. ACC suggests that the question of law to be set forth in the certification order, should this Court certify a question, read as follows:

> Under Rhode Island s Real Estate Sales Disclosure Act, are historic-district zoning regulations deficient conditions as that term is defined in the Act?

2. ACC suggests that the statement of all facts relevant to the question certified and showing fully the nature of the controversy in which the question arose, should this Court certify a question, read as follows:

> In November 2005, the plaintiff American Capital Corporation [ACC] and the defendants Timothy L. Blixseth and Edra Blixseth executed an Agreement for Sale and Purchase under which the Blixseths were to purchase from ACC for $25 million dollars the Newport oceanfront estate known as Miramar. The Bellevue Avenue estate, consisting of the mansion, a carriage house, and a vacant parcel of land, is located in the Newport Historic District and thus subject to Newport s historic-district zoning regulations.
>
> Prior to the execution of the Agreement ACC delivered to the Blixseths real estate disclosure forms pertaining to the properties, as required by R.I. Gen. Laws §5-20.8-2(a). However, because the forms that ACC used were outdated, the forms did not disclose that the properties were located in an historic district nor provide the notice pertaining to property located in an historic district that is required by §5-20.8-2(b)(xxiii).
>
> On the January 17, 2006, closing date, ACC claimed to be ready, willing, and able to close, but the Blixseths failed to attend the closing. On February 3, 2006, ACC commenced an action seeking both a declaration that the Blixseths had breached the Agreement and equitable and/or legal relief on account of the breach. Thereafter, on March 10, 2006, the Blixseths notified ACC that they had just learned that the parcels were located in the Newport Historic District and that they were therefore terminating the Agreement under R.I. Gen. Laws §5-20.8-4 on the ground that ACC had failed to disclose a materially deficient condition.
>
> On June 5, 2007, the Blixseths moved for summary judgment, asserting, *inter alia*, that they had lawfully terminated the Agreement on March 10, 2006, pursuant to §5-20.8-4. ACC opposed the Blixseths motion, arguing, *inter alia*, that historic-district zoning regulations are not deficient conditions as defined by §5-20.8-1(5). Therefore, ACC continued, it had not failed to disclose a materially deficient condition and, hence, the Blixseths had no right to terminate the Agreement under §5-20.8-4.